UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

GERARD LEONARD,

                              Plaintiff,                             **OPINION & ORDER**

                 -against-                                     20-cv-2832 (NG)

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

------------------------------------------------------------ x
**GERSHON, United States District Judge:**

      Plaintiff Gerard Leonard sues the Commissioner of Social Security[1] ("the Commissioner") under 42 U.S.C. § 405(g), seeking reversal of a decision denying his claim for disability insurance benefits under Title II of the Social Security Act. 42 U.S.C. §§ 401 *et seq.* In their motions for judgment on the pleadings under Rule 12(c) of the Federal Rule of Civil Procedure, the parties agree that plaintiff is entitled to a remand to the Commissioner. However, the Commissioner seeks a remand for a new hearing, while Leonard seeks a remand for the calculation of benefits only. For the reasons that follow, Leonard's motion is granted, and the Commissioner's is denied. The case is remanded for the calculation of benefits only.

**I.      Standard of Review**

      A claimant is entitled to disability benefits if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

---

[1] The plaintiff commenced this action against Andrew Saul, as Commissioner of Social Security. On July 9, 2021, Dr. Kilolo Kijakazi became the Acting Commissioner of Social Security. Because Andrew Saul was sued in this action only in his official capacity, Kilolo Kijakazi is automatically substituted for Andrew Saul as the named defendant. *See* Fed. R. Civ. P. 25(d). The Clerk of Court shall amend the caption in this case as indicated above.

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations break down the inquiry into a five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998) (internal quotation marks, brackets, and ellipsis omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The claimant has both "the general burden of proving that he or she has a disability within the meaning of the [Social Security] Act" and the specific "burden of proving his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (internal quotation omitted). However, once a claimant has been found unable to perform past relevant work by reason of a medically determinable impairment at step four of the five-step evaluation, "the burden shifts to the Commissioner to prove that the claimant is capable of working." *Butts v. Barnhart (Butts II)*, 416 F.3d 101, 103 (2d Cir. 2005) (internal quotation marks, brackets, and ellipses omitted), *amending, on reh'g, Butts v. Barnhart (Butts I)*, 388 F.3d 377 (2d Cir. 2004).

2

In reviewing a denial of disability benefits, a district court may set aside the Commissioner's determination if the factual findings are unsupported by substantial evidence or if the decision is based on legal error. *Cichocki*, 729 F.3d at 175–76. Where a Commissioner's determination has been overturned, a district court should remand for calculation and payment of benefits "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (citing *Gold v. Sec'y of Health, Educ. and Welfare*, 463 F.2d 38, 44 (2d Cir. 1972)). Preventing further delay in awarding plaintiff benefits is "a factor militating against a remand for further proceedings where the record contains substantial evidence of disability." *Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 230 (W.D.N.Y. 2016) (*quoting McClain v. Barnhart*, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004)). But, of course, "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**II.    Background**

Leonard worked as an aide for the Development Disabilities Institute from 1986 to 1993 and as a police officer from 1993 to 2007. For the final 18 months of his time as a police officer, plaintiff was assigned to desk work as a result of orthopedic injuries, including injuries to his knees and spine. In 2007, at age 40, he retired on disability from the police force.

On March 22, 2013, Leonard applied for disability insurance benefits based on his physical condition. He sought benefits for the period of November 30, 2007, his alleged onset date, through December 31, 2013, his date last insured. Plaintiff attended a hearing and testified before Administrative Law Judge ("ALJ") Bruce MacDougall on August 14, 2014. In a decision dated August 19, 2014, ALJ MacDougall concluded that Leonard was not disabled because, though

unable to perform past relevant work, he had the residual functional capacity to perform light work. Thereafter, in March of 2015, plaintiff underwent spinal surgery, specifically a posterior spinal fusion and laminectomy at L4-5. Plaintiff submitted evidence of the surgery to the Appeals Council, but ALJ MacDougall's decision became final on August 10, 2015, when the Appeals Council denied plaintiff's request for review.

Plaintiff timely commenced a federal action on October 5, 2015, and both parties moved for judgment on the pleadings pursuant to Rule 12(c). On February 6, 2017, I vacated the final administrative decision and remanded plaintiff's case for additional administrative proceedings based on the Appeals Council's failure to consider the evidence of plaintiff's back surgery. *Leonard v. Colvin*, 15-CV-5757 (NG), 2017 WL 496072 (E.D.N.Y. Feb. 6, 2017).[2] I also directed the ALJ to reconsider the record in its entirety, in light of the new evidence, and to reevaluate the weight he had afforded to plaintiff's treating orthopedic surgeon and to the consultative surgeon, who I noted is not an orthopedist and whose opinions I found to be vague. *Id.* at *7.

Upon remand, plaintiff testified at a second hearing on August 6, 2018 before ALJ Alan Berkowitz. On August 15, 2018, ALJ Berkowitz issued a decision again denying Leonard's claim after finding that plaintiff was not disabled because he retained the residual functional capacity to perform the full range of unskilled sedentary work that exists in significant numbers in the national economy.

Plaintiff appealed, and, on July 11, 2019, the Social Security Appeals Council granted review, vacated the ALJ's decision, and remanded for additional proceedings. The Appeals Council found that ALJ Berkowitz committed multiple errors, including relying on an incomplete

---

[2] This decision contains a more extensive recitation of plaintiff's physical condition, medical history, and the procedural history of this matter.

record, conducting an inadequate evaluation of a treating source opinion, and not relying on evidence from a vocational expert. It ordered, upon remand, that the ALJ expand the record and

> obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. . . . The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations. . . .

Administrative Record at 330–32.

On February 11, 2020, Leonard appeared for a third hearing and again testified before ALJ Berkowitz. A vocational expert also testified. The ALJ asked the vocational expert to consider a hypothetical claimant with plaintiff's vocational profile who could perform sedentary work but could sit only for 30 minutes at a time before taking a two-minute break, who could stand and walk for 15 minutes at a time, followed by a two-minute break, and who could only occasionally reach overhead with his dominant arm. The hypothetical claimant could occasionally climb stairs, balance, stoop, kneel, crouch, crawl, push, and pull. The vocational expert responded that the hypothetical claimant could perform several semi-skilled jobs even if he could only stand for 15 minutes at a time and could only occasionally reach overhead with his dominant arm. This testimony relied on the assumption that Leonard possessed transferrable work skills that would permit him to perform semi-skilled jobs.

In a decision dated March 2, 2020, ALJ Berkowitz again denied Leonard's claim, for the reasons discussed below. That decision became final when the Appeals Council declined to assume jurisdiction over the case. *See* 20 C.F.R. § 404.984 (Appeals Council review of ALJ decisions in cases remanded by Federal courts). Plaintiff then timely commenced this action.

5

**III.    The ALJ's March 2, 2020 Decision**

ALJ Berkowitz found at step one of the sequential analysis that Leonard had not performed substantial gainful activity during the relevant period. At step two, the ALJ found that plaintiff's degenerative disc disease of the lumbar spine and right knee degenerative joint disease constituted severe impairments. At step three, the ALJ found that plaintiff did not have a listed impairment. The ALJ then found that plaintiff could perform a range of sedentary work through the date last insured. Specifically, the ALJ concluded that plaintiff could perform a reduced range of sedentary work. The ALJ found that Leonard could stand for just 30 minutes at a time, he could only occasionally perform postural activities, and he could only occasionally reach with his dominant arm. Thus, the ALJ assessed a very restrictive functional capacity finding that accounted for all of plaintiff's limitations.

Based on this residual functional capacity, the ALJ found, at step four, that plaintiff could not perform his past relevant work as a police officer. The ALJ, however, did not make a finding as to the transferability of any relevant job skills. Believing that Leonard would be found not disabled whether or not he had any transferable skills, the ALJ found that the transferability of job skills was not material to the determination of disability. At step five, the ALJ relied on the vocational expert's testimony to find that plaintiff could perform other, unskilled work that existed in significant numbers in the national economy.

**IV.    Discussion**

The parties do not dispute that ALJ Berkowitz committed two errors at step five that require his decision to be vacated. First, the ALJ's hypothetical questions to the vocational expert did not match the ALJ's finding on plaintiff's residual-functional capacity in step three. Specifically, the ALJ found that Leonard could only occasionally reach with his dominant arm, but he failed to

6

include this limitation in the hypothetical question that he posed to the vocational expert. Instead, ALJ Berkowitz's hypothetical question to the vocational expert asked about occasional *overhead* lifting with a dominant arm, a narrower limitation than plaintiff's. Second, the ALJ did not consider the transferability of skills to be material, and, as a result, his hypothetical question to the vocational expert did not include any skills. However, in response to the hypothetical question, the vocational expert identified *semi-skilled* jobs, even though the record contained no evidence regarding any transferable skills plaintiff had during the relevant time. Because of these errors, the vocational expert's testimony does not provide substantial evidence for the ALJ's step five finding that plaintiff had the functional capacity to perform a significant number of jobs in the national economy.

The parties agree that this case should be remanded, but they disagree as to whether, as the Commissioner argues, it should be remanded for further proceedings, or, as plaintiff argues, for a calculation of benefits only. Plaintiff argues that a fourth hearing would place him at risk of continued delay and additional erroneous adjudications, while the Commissioner argues that it is "conceivable" that a fourth hearing could reveal jobs that plaintiff could have performed.

Nine years have passed since plaintiff applied for disability insurance benefits. The record developed since then provides persuasive, undisputed evidence that Leonard has met his burden of proving that he suffers from a sufficient physical impairment that has left him unable to perform his previous work. During this same time, the Commissioner has had three opportunities to meet her burden of proving that Leonard is capable of working, despite his disability. She admits that she has failed to meet this burden. This failure is especially glaring given the very specific orders of the Appeals Council to ALJ Berkowitz when it previously remanded the case to him. The Commissioner nevertheless argues that further evidentiary proceedings are required to prove that

7

plaintiff had the skills to perform the jobs that were identified by the vocational expert in his last hearing. But the Commissioner has not presented a credible argument that a fourth hearing would result in the outcome she seeks. I therefore find that Leonard is disabled and, as in *Parker*, that a remand for further evidentiary proceedings would serve no purpose. 626 F.2d at 235. Accordingly, and in light of the substantial delay in awarding plaintiff benefits because of two prior remands, I remand this case for a calculation of benefits only.

**V.     Conclusion**

For the reasons set forth above, plaintiff's motion is granted, and the Commissioner's cross-motion is denied. The case is remanded to the Commissioner for the calculation of benefits only. Additionally, the Commissioner is directed to assign the case to a different administrative law judge on remand.

**SO ORDERED.**

_____/s/_____
**NINA GERSHON**
**United States District Judge**

March 28, 2022
Brooklyn, New York